STATE OF CONNECTICUT *v.* REGINALD JONES
(10644)

PETERS, PARSKEY, SHEA, GRILLO and SPONZO, Js.

Argued February 7—decision released April 24, 1984

*John R. Williams,* with whom, on the brief, were *Sue L. Wise* and *Elizabeth M. Inkster,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Michael Dearington,* assistant state's attorney, and *Edmund Perry,* law student intern, for the appellee (state).

PETERS, J. The principal issue in this case is whether the defendant's conviction for felony murder must be reversed because the trial judge erred in instructing the jury on the statutory defense of insanity. The defendant, Reginald Jones, was charged by indictment on February 22, 1979, with felony murder, in violation of General Statutes § 53a-54c.[1] The jury returned a verdict of guilty and the trial court rendered judgment in accordance with the verdict. The defendant appeals from the judgment of conviction.

---

[1] General Statutes § 53a-54c, as in effect at the time of the offense, provided: "Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

The jury might reasonably have found the following facts. In the early afternoon of December 14, 1978, the defendant, then seventeen years old, went to Wilbur Cross High School in New Haven. He was not enrolled at Wilbur Cross as a student. After walking around the school halls for a few minutes, the defendant approached two different individuals and asked where he could get some money or marijuana. He told one witness that if he found a drug dealer he would stick him up. One of the individuals approached by the defendant suggested that he should rob the school store, where he would find $600 or $700 in an envelope. The defendant proceeded to the store, approached the counter, pointed a gun at Anthony Annunziata, the teacher on duty, and demanded that Annunziata give him the money. When Annunziata did not respond, the defendant fired a single shot and fled. The victim died as a result of a gunshot wound.

Several witnesses observed the defendant in the vicinity of the school store prior to the shooting. The student who was working in the store with the victim witnessed the crime and positively identified the defendant. After a search of the defendant's residence, the police recovered a gun from the defendant's bedroom which matched a bullet found on the floor of the Yale-New Haven Hospital operating room in which the victim had died. Following his arrest, the defendant confessed his involvement in the offense.

Although the defendant objected to the admission of much of the evidence described above, he did not seriously dispute that he had shot and killed Annunziata. The defendant relied primarily on an insanity defense.

The defendant raises numerous claims of error on this appeal. He claims that the trial court erred (1) in failing to dismiss the indictment despite systematic discrimination against blacks and women in the selection

of grand jury foremen in New Haven; (2) in permitting consideration of an indictment whose disjunctive language violated his right to a unanimous jury verdict; (3) in denying his motions to suppress his confession and the tangible evidence seized from his bedroom; (4) in various aspects of its charge to the jury, principally the portion defining the defense of insanity; and (5) in denying his motion to disqualify all prosecutors for the judicial district of New Haven. We will address first those claims that relate to the indictment, then those that relate to admissibility of evidence, to the jury instructions and to disqualification.

## I

In his first claim of error, the defendant argues that systematic discrimination against blacks and women in the selection of grand jury foremen in the judicial district of New Haven violated his rights under the due process and equal protection clauses of the constitution of the United States and article first, §§ 8 and 20, of the constitution of Connecticut, and that, as a result, the indictment against him must be dismissed. At the pretrial hearing on the motion to dismiss the indictment, the defendant introduced evidence describing the grand jury selection process from January 1, 1958, through February 22, 1979, the date he was indicted. The trial court, however, made no findings of fact when it denied the motion. Although much of the proffered evidence was statistical in nature, the state has conceded neither its accuracy nor its probative quality. Furthermore, the defendant's brief fails to set out the facts on which it relies, as Practice Book § 3060F (b) requires. On this state of the record, we decline to consider this claim further.[2]

---

[2] Defense counsel failed in two respects properly to preserve this claim of error for appeal. First, he failed to seek findings of fact from the trial court by filing a motion for articulation pursuant to Practice Book § 3082. Second, upon this court's denial of the defendant's motion for leave to file

## II

The defendant next claims that the indictment was fatally defective because of its use of disjunctive language. The indictment charged, in the language of the felony murder statute,[3] that the defendant *"did commit or attempt to commit a robbery* and in the course of and in furtherance of such crime or flight therefrom he, or another participant, caused the death of a person . . . ."* (Emphasis added.) According to the defendant, this indictment charged two separate predicate felonies —robbery and attempted robbery—in the alternative, and therefore erroneously permitted the jury to convict him in the absence of a unanimous agreement among the jurors that he had committed one or the other of the predicate crimes charged. This possibility, the defendant asserts, deprived him of his right to a unanimous jury verdict. We disagree.

The defendant's argument rests on the decision of the United States Court of Appeals for the Fifth Circuit in *United States* v. *Gipson,* 553 F.2d 453 (5th Cir. 1977). There, the defendant was charged with selling or receiving a stolen vehicle, in violation of 18 U.S.C. § 2313.[4] The trial court charged the jury that in order to convict the defendant they need not agree on which of the six statutorily prohibited acts the defendant had committed, as long as they were each convinced beyond a reasonable doubt that he had committed one

---

an oversize brief, the defendant set forth his statement of facts in an appendix. This practice is insufficient to satisfy the requirement of Practice Book § 3060F (b), and, accordingly, this court struck those pages from the appendix. For both of these reasons, the factual record now before us is inadequate for appellate review.

[3] The text of General Statutes § 53a-54c is set forth at footnote 1, supra.

[4] 18 U.S.C. § 2313 provides as follows: "Whoever receives, conceals, stores, barters, sells or disposes of any motor vehicle or aircraft moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years or both."

or another of the acts proscribed. *United States* v. *Gipson,* supra, 455–56. The court of appeals reversed the defendant's conviction on the ground that the instruction had violated his right to a unanimous jury verdict. Id., 458–59. The court reasoned that the statute prohibited six acts in two distinct conceptual categories: (1) receiving, concealing and storing; and (2) bartering, selling and disposing. The challenged charge violated the defendant's right to a unanimous jury verdict because it "authorized the jury to return a guilty verdict despite the fact that some jurors may have believed that Gipson engaged in conduct *only* characterizable as receiving, concealing, or storing while other jurors were convinced that he committed acts *only* constituting bartering, selling, or disposing." (Emphasis added.) Id., 458.

*Gipson's* holding is inapposite to the present case because the robbery and attempted robbery charged here, unlike the two crime groups charged in *Gipson,* are not mutually exclusive. Robbery differs from attempted robbery only in that the latter requires an act constituting a "substantial step" toward completion of the robbery, rather than a completed robbery.[5] While some jurors might have believed that the defendant attempted the robbery but did not complete it, and others might have believed that he did, in fact, complete the crime, none could have believed that the defendant completed the robbery without first undertaking a substantial step toward achieving its object.

[5] General Statutes § 53a-49 defines a criminal attempt, in pertinent part, as follows: "Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

The unanimous verdict of guilty thus necessarily encompassed a unanimous finding that the defendant had at least attempted to commit robbery. Accordingly, the defendant's second claim of error must fail.[6] Cf. *State v. Giwosky,* 109 Wis. 2d 446, 456, 326 N.W.2d 232 (1982) (jury need not be unanimous with respect to whether defendant committed assault by means of throwing log or striking victim); *Manson v. State,* 101 Wis. 2d 413, 430–31, 304 N.W.2d 729 (1981) (jury need not be unanimous with respect to whether defendant committed robbery by use of force or threat of force).

### III

The defendant next claims that the trial court erred in denying his motions to suppress the tangible evidence seized from his bedroom and the statements he gave to the police following his arrest. We find no error with respect to either motion.

### A

The undisputed factual circumstances surrounding the seizures of physical evidence are as follows. On December 14, 1978, shortly after the commission of the offense, members of the New Haven police department received information indicating that the defendant might be involved in the crime. Two officers proceeded to the house where the defendant resided with his father, stepmother and several other family members. After obtaining the signature of Carol Jones, the defendant's stepmother, on a consent to search form, the officers searched the defendant's bedroom and seized, inter alia, several photographs of the defendant,

---

[6] This case differs further from *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977), in that this defendant challenges the sufficiency of the indictment, itself, rather than jury instructions alleged to be erroneous. Even in *Gipson,* where the defendant was charged under a statute that prohibited any one of six different acts, the court did not suggest any defect in an indictment cast in the disjunctive statutory language. The defendant in this case does not pursue any challenge to the jury charge on this ground.

numerous items of clothing and papers bearing names and addresses. Several hours later, after receiving a tip from an informant that the defendant had hidden the murder weapon inside a television set in his room, the police returned to the Jones home and obtained the signature of Sammie Jones, the defendant's father, on a second consent to search form. They then dismantled the television set and seized the gun which they found inside. The defendant was not present on either occasion. No warrant was issued authorizing either search.

The only serious issue with respect to the legality of either search is whether it was authorized by the valid consent of one of the defendant's parents. The state makes no claim that the searches were conducted pursuant to warrant or that they were supported by probable cause and exigent circumstances.

At the hearing on the defendant's motion to suppress tangible evidence, both Carol Jones and Sammie Jones testified that they signed the consent to search forms because the police officers told them that if they did not sign, the police would obtain a search warrant. Both witnesses claimed not to have consented to the searches, but to have acquiesced because they believed they had no choice.

In contrast, Officer Douglas MacDonald and Detective William White, the officers who conducted the searches of the Jones residence, testified that both of the defendant's parents wished to cooperate with the police and consented freely to the searches. Both policemen denied telling the defendant's parents that they would get a search warrant if the parents did not consent.

A warrantless search is not unreasonable under either the fourth amendment to the constitution of the United States or article first, § 7, of the consti-

tution of Connecticut if a person with authority to do so has freely consented to the search. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Dotson* v. *Warden,* 175 Conn. 614, 618, 402 A.2d 790 (1978). The state bears the burden of proving that the consent was free and voluntary and that the person who purported to consent had the authority to do so. *Bumper* v. *North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *Dotson* v. *Warden,* supra, 618-19. The state must affirmatively establish that the consent was voluntary; mere acquiescence to a claim of lawful authority is not enough to meet the state's burden. Id.

"The question whether consent to a search has in fact been freely and voluntarily given, or was the product of coercion, express or implied, is 'a question of fact to be determined from the totality of all the circumstances.' *Schneckloth* v. *Bustamonte,* supra, 227. As a question of fact, it is normally to be decided by the trial court upon the evidence before that court together with the reasonable inferences to be drawn from that evidence." *Dotson* v. *Warden,* supra, 619; see also *State* v. *Zindros,* 189 Conn. 228, 238, 456 A.2d 288 (1983). In this case, the trial court did not make any explicit findings of fact, but merely denied the defendant's motion to suppress without opinion.[7] In view of the evidence presented to the trial court, which related almost exclusively to the question of consent, the trial court's denial of the motion to suppress must include implicit findings that the defendant's parents had the authority to consent to the searches and did in fact voluntarily consent. We may reverse these findings on appeal only

---

[7] Particularly in cases such as this one, involving multiple, interrelated motions to suppress both tangible and testimonial evidence, we note that it is the better practice for the trial court expressly to articulate the subsidiary findings of fact on which its ruling is based. Counsel who wish to appeal such rulings should move for articulation pursuant to Practice Book § 3082.

if they are clearly erroneous. Practice Book § 3060D; *State* v. *Zindros,* 189 Conn. 228, 238, 456 A.2d 288 (1983).

The issue concerning the voluntariness of the defendant's parents' consent revolves principally around the credibility of witnesses. Had the trial court believed the testimony of Sammie and Carol Jones, their consent, allegedly in response to police admonitions that refusal would be futile, would not meet constitutional standards of voluntariness. As we held in *Dotson* v. *Warden,* supra, 621, "the intimation that a warrant will automatically issue is as inherently coercive as the announcement of an invalid warrant." See *United States* v. *Faruolo,* 506 F.2d 490, 495–98 (2d Cir. 1974) (Newman, J., concurring). The police officers alleged to have coerced the defendant's parents, however, denied making any such threats. The evaluation of the credibility of witnesses is left to the sound discretion of the trial court. In light of the conflicting testimony in the record and the absence of a finding by the trial court that the threat was ever uttered; see *Dotson* v. *Warden,* supra, 621; we hold that the trial court's implicit finding that the defendant's parents freely and voluntarily consented to the searches was not clearly erroneous.

The parents' voluntary consent to the searches in question would, of course, be meaningless unless the state also proved that they had the authority to consent to the search of the defendant's bedroom. In order for third-party consent to be valid, the consenting party must have "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States* v. *Matlock,* 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974); *State* v. *Zindros,* supra, 244–47; *Dotson* v. *Warden,* supra, 622.

According to the defendant's parents' own testimony in this case, the defendant was a minor. He lived, without paying rent, in a house owned by his father. Although the door to the defendant's bedroom was generally kept closed, it was not locked. The defendant's parents observed a policy of respecting their teenaged children's privacy, and, therefore, did not, as a matter of course, enter the children's rooms uninvited. The defendant's father believed, however, that it was his right to enter the defendant's room without permission if "there was a reason for [him] to do so." The state also introduced evidence that items of property not belonging to the defendant, such as the other children's Christmas presents and the defendant's sister's slippers, were found in the defendant's bedroom, indicating that other members of the defendant's family did in fact use the room.

Under all the circumstances in this case, the trial court's implicit finding that the defendant's parents retained sufficient control over their minor son and his bedroom to enable them to consent to a search of the room was not clearly erroneous. Accordingly, we find no error in the trial court's denial of the defendant's motion to suppress tangible evidence.

## B

The defendant also claims error in the trial court's denial of the motion to suppress his confession. The undisputed facts surrounding the defendant's arrest and confession are as follows. Following the two searches of the Jones home, the police obtained two photographic identifications of the defendant from one of the photographs seized from his room. They then obtained an arrest warrant based on the identifications, other seized evidence and information received from informants. The defendant was arrested on the evening of December 15, 1978, after he was located in an

attic crawl space of a house belonging to a friend of his family. The defendant's father was present at his son's arrest, and rode with the defendant to the New Haven police station.

At the police station, an officer read the defendant the *Miranda* warnings and obtained the defendant's signature on a waiver form. Another officer brought the defendant something to eat. The defendant was then, in the presence of his father, questioned about the shooting. During the course of this interrogation, the defendant confessed his involvement in the crime. In response to a police request, he then agreed to make and sign a statement. Thereafter, a statement, in question and answer format, was tape recorded, and a simultaneous stenographic transcript was produced. The statement included an acknowledgement that both of the defendant's parents were present, that the defendant had been advised of his constitutional rights in his parents' presence, that he understood his rights, that he had gone to school until the ninth grade, that he could read and write English, and that he knew he was under arrest for murder. On three occasions during the course of the recorded questioning, the defendant responded to questions by stating "I don't want to answer that right now." The police did not then terminate the interview, but asked other questions, to which the defendant responded. After the statement was concluded, the defendant and both of his parents signed the typed copy.

The trial court denied the defendant's motion to suppress. At trial, the court admitted a police officer's testimony concerning the defendant's admissions.

On appeal, the defendant argues (1) that the confession was the tainted fruit of the illegal searches of his bedroom; (2) that the confession was obtained in vio-

lation of his *Miranda* rights; and (3) that the state failed to prove that he had knowingly waived either his right to remain silent or his right to counsel.

The defendant's first argument, that his confession was the tainted fruit of the prior illegal searches of his bedroom, is without merit in view of our disposition of the underlying search and seizure claim.

The defendant next argues that the police violated his *Miranda* rights when they did not immediately terminate questioning in response to his statements that "I don't want to answer that right now." While the defendant is correct that the rule of *Miranda* v. *Arizona,* 384 U.S. 436, 473–74, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), requires that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease," the transcript of the interrogation in this case does not support the defendant's claim. On three separate occasions the defendant declined to answer specific questions that sought to elicit direct confessions of guilt. He did not, however, state that he did not wish to answer any question at all. The officer conducting the interrogation did not repeat the questions that the defendant refused to answer, but asked others, to which the defendant voiced no objection. Under these circumstances, the defendant's retort to the most pointed inquiries with the statement "I don't want to answer that right now," did not constitute an invocation of his right to remain silent that would require a termination of the interview.

Finally, the defendant claims that he did not knowingly and intelligently waive either his right to remain silent or his right to counsel and that his confession was, therefore, involuntary. At the hearing on the defendant's motion to suppress his confession, the state bore the burden of proving by a preponderance of the evi-

dence; *State* v. *Harris,* 188 Conn. 574, 579, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983); that the defendant's waiver was knowing and intelligent. *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *State* v. *Acquin,* 187 Conn. 647, 677, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); *State* v. *Wilson,* 183 Conn. 280, 283–84, 439 A.2d 330 (1981); *State* v. *Derrico,* 181 Conn. 151, 161–62, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). The voluntariness of the waiver was essentially a question of fact to be determined by the trial court with reference to the totality of the circumstances surrounding the defendant's statements. *North Carolina* v. *Butler,* 441 U.S. 369, 374–75, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961); *State* v. *Acquin,* supra, 677; *State* v. *Staples,* 175 Conn. 398, 408, 399 A.2d 1269 (1978).

To support his claim that his confession was involuntary, the defendant points to the following circumstances. He was a minor child. He was intellectually impaired. He had just been arrested under emotional circumstances, having been coaxed out of an attic crawl space in tears. He was charged with murder and was interrogated in custody.

The state, however, relies on evidence before the trial court indicating that the defendant had been advised of his rights, acknowledged his understanding, and signed a written waiver. From the time of his arrest to the conclusion of his confession, he remained in the presence of his father. Both of the defendant's parents were with him during the tape recording of his statement, and both of them acknowledged their understanding of the *Miranda* warnings. Upon first entering the police station, the defendant was left alone with his father, and he was permitted to confer with his parents in private before he agreed to give a written statement. The statement itself consists of responsive

answers to questions and does not reveal a mental impairment so severe as to belie the defendant's stated understanding of his rights.

Based on all the evidence before the trial court, we cannot conclude that the court erred in finding that the confession was the product of the defendant's free will. Accordingly, we find no error in the denial of the motion to suppress.

## IV

The defendant's principal claim of error is that the trial court erred when it charged the jury not only on the statutory defense of insanity set forth in General Statutes § 53a-13,[8] but in addition instructed them on the superseded "M'Naghten" and "irresistible impulse" tests of insanity.[9] According to the defendant, this is precisely the error condemned by this court in *State v. Toste,* 178 Conn. 626, 632–33, 424 A.2d 293 (1979), and, therefore, as in *Toste,* the defendant's conviction must be set aside.

The state does not dispute that the trial court's charge was erroneous. The state argues, however, that the trial court cured its initial error when, in response

---

[8] General Statutes § 53a-13, as in effect at the time of the offense, provided: "Sec. 53a-13. INSANITY AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental disease or defect do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

[9] After reciting the statutory language of General Statutes § 53a-13, the trial court twice charged the jury as follows: "The definition of insanity or lack of capacity would include a mind which is either so naturally weak or so impaired by disease or otherwise as to make its possessor incapable of distinguishing right from wrong. It would not include a mind which, while weak or incapable in some measure, is still sound enough to make an essential choice in a course of conduct, and with will enough to resist an impulse which its possessor knows will result if yielded to, in exposing him to just and proper punishment for crime . . . ."

to a request by the jury during the course of their deliberations for a "copy of definition of legal insanity," the court twice read the statutory definition.[10] The state asserts that this case is governed instead by our decision in *State* v. *McCall,* 187 Conn. 73, 86–87, 444 A.2d 896 (1982), in which we held that an erroneous charge similar to that given in *State* v. *Toste,* supra, could be cured by repeating the correct statutory definition. Further, the state argues that the defendant failed to object properly to the curative charge. We agree with the state that the defendant's conduct at trial indicated his acceptance of the supplemental charge as sufficient to cure the initial error.

The circumstances of this case fall somewhere between those presented by *Toste* on the one hand and *McCall* on the other. In *Toste,* the trial court gave a charge that erroneously combined the statutory definition of insanity with several common law definitions. *State* v. *Toste,* supra, 631–32. The defendant promptly excepted. The following day, when the jury requested a written copy of the definition of insanity, the trial court repeated its erroneous instructions verbatim, and the defendant reiterated his exception. *Toste* thus presented no question with respect to a curative charge or to the clarity of the defendant's objection. In *State*

---

[10] The trial court responded to the jury's request as follows: "Good morning, ladies and gentlemen. In conferring with both counsel, we have agreed that perhaps the best way to answer your question is to read to you in its entirety the Statute 53a-13. Now, this consists only of six lines, so I think that that will also comply with the second part of your request that it be a short definition; but this is the statute in its entirety. It's 53a-13, Insanity as Defense.

" 'In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect, lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms "mental disease" or "defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.' "

The court then repeated the statutory definition verbatim.

v. *McCall*, supra, by contrast, the court first errone-
ously charged the jury. *State* v. *McCall*, supra, 85–86.
Then, however, in response to the defendant's excep-
tion, the court reconvened the jury, acknowledged that
it had "used a word or two wrong" in its previous
insanity charge; id., 86; and read to the jury the statu-
tory definition. The defendant agreed that the cura-
tive instruction was correct. Later, in response to a
request from the jury, the court provided them with
a written copy of the statute. The defendant took no
further exception. Id.

In this case, it is undisputed that the court erred
in its initial charge and that the defendant promptly
excepted. The trial court did not immediately reconvene
the jury to remedy its mistake as in *McCall*, and the
supplemental charge did not, as in *McCall*, expressly
acknowledge the court's previous error. The court did,
however, consult with counsel before answering the
jury's request for a "copy of the legal definition of
insanity—short definition." The supplemental instruc-
tion did not repeat the initial error, but consisted solely
of a reading of the correct statutory standard. Defense
counsel had agreed that this would be the best way to
answer the jury's question.[11] The defendant excepted to
the supplemental charge on only two grounds: (1) that
there was no evidentiary basis for an instruction on the
last sentence of the statute; and (2) that the court had
denied the jury's request that they be given a written
copy of the statute.[12] The defendant did not reassert
his exception to the initial charge, nor did he object to
the supplemental charge as insufficient to cure the ini-

[11] See footnote 10, supra.

[12] Defense counsel excepted as follows:

"Mr. Williams: If I may, your Honor, I'd like to note exceptions to two
aspects of the Court's action just now. The first one, again, I'd like to reiter-
ate my exception to your reading of that final sentence on the ground that
it is totally unsupported by the evidence. The evidence is clear that if there's
a mental disease or defect, it is not manifested only by criminal or other-

tial error. He took no exception to the court's failure to instruct the jury not to consider its previous definition of insanity.

The court's initial error in this case was serious. It infected the jury instructions on the central issue in dispute—the defendant's insanity defense. In *State* v. *Toste,* supra, we reversed a conviction where the trial court charged the jury in terms nearly identical to the charge in this case. We explained that "the commingling of the old common-law rules with the statutory rule, could only create confusion as to what was the correct standard for determining insanity." *State* v. *Toste,* supra, 632–33. Such confusion, however, is not necessarily irreparable. When the jury requested clarification of the proper definition of insanity, it presented the court and counsel with an appropriate opportunity to correct the misapprehension created by the court's earlier charge. When consulted by the trial court, the experienced counsel representing the defendant could then have reminded the court of his previous exception, suggested whatever curative language he deemed most appropriate and reiterated his exception if he found the court's curative charge insufficient. The purpose of requiring an attorney to except is not merely formal. An exception serves the important function of alerting the trial court to error while there is time to correct it without ordering a retrial. In the circumstances of this case, the defendant's failure to except to the supplementary charge is not a mechanical barrier to review. Rather, when viewed in the context of

wise antisocial conduct. Therefore, it is confusing and, indeed, misleading; to read that sentence to the jury on the facts of this particular case. I cited my authority for that, I think, yesterday and also in my requests to charge.

"In addition to that, as I recall the jury's note yesterday, your Honor, the jury asked for a copy of the short definition of insanity, and I think that that request should be complied with and that they should be given the definition in writing.

"The Court: The exceptions are noted."

defense counsel's participation in fashioning the supplementary charge, the failure to except supports the trial court's conclusion that the defendant accepted the supplemented charge as correct.[13] Finally, the fact that the correct charge was delivered orally rather than in written form cannot require reversal of the defendant's conviction. The defendant therefore cannot prevail on this claim of error.

The defendant's remaining claims of error in the jury instructions are equally without merit. First, the defendant claims that the trial court unconstitutionally shifted the burden of proving insanity to the defendant when, after charging the jury that the defendant was not criminally responsible if he lacked "substantial capacity," the court further instructed them that "lack of capacity is not, however, proved by [certain] evidence."[14] The defendant is correct that he had no burden of proof on the issue of sanity. Once he raised the insanity defense, the state was required to prove his sanity beyond a reasonable doubt. *State* v. *Holmquist,* 173 Conn. 140, 149, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). Any instructions lessening the state's burden would, as the defendant claims, violate his right to due process of law. *Sandstrom* v. *Montana,* 442 U.S. 510, 524, 99 S. Ct.

---

[13] The only record of what transpired in chambers in response to the jury's inquiry is the trial court's statement to the jury that "[i]n conferring with both counsel, we have agreed that perhaps the best way to answer your question is to read to you in its entirety the Statute 53a-13." Absent any showing by the defendant to the contrary, we must presume the regularity of the proceedings off the record and the accuracy of the trial court's characterization of those proceedings. *Parham* v. *Warden,* 172 Conn. 126, 134, 374 A.2d 137 (1976); *Long* v. *Loughlin,* 171 Conn. 291, 292, 370 A.2d 925 (1976); *State* v. *Nash,* 149 Conn. 655, 659, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962).

[14] The defendant excepted to the following portion of the trial court's charge: "*Lack of capacity is not,* however, *proved* by evidence that the slayer entertained no ill will or by the enormity of the crime or by the fact that there was no apparent provocation." (Emphasis added.)

2450, 61 L. Ed. 2d 39 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The instructions in this case did not, however, shift any burden to the defendant.

The defendant concedes that we must review the charge as a whole and not analyze small portions in isolation. See *State* v. *Vasquez,* 182 Conn. 242, 246, 438 A.2d 424 (1980); *State* v. *Harrison,* 178 Conn. 689, 693, 425 A.2d 111 (1979). Where, as here, the claimed error is one of constitutional magnitude, we must determine whether, in light of the charge as a whole, it is reasonably possible that the jury were misled. *State* v. *Mason,* 186 Conn. 574, 585–86, 442 A.2d 1335 (1982).

In this case the trial court carefully and correctly instructed the jury on four separate occasions that the state had the burden of proving each element of the crime, *including the defendant's sanity,* beyond a reasonable doubt. Under the circumstances, it is not reasonably possible that the jury understood the challenged instruction to impose on the defendant the burden of proving his lack of capacity.

The defendant next claims that the trial court's instructions on the element of intent were so confusing as to mandate reversal of his conviction. He objects to the trial court's mention of the specific intent to kill required by the murder statute, when he was charged not with murder but with felony murder.[15] According to the defendant, the trial court's instructions could have led the jury to convict him if they believed he had

[15] The defendant excepted to the following portion of the trial court's charge: "The State is not here alleging that the defendant actually intended to cause the death of Mr. Annunziata. That would constitute an intentional killing under the statute dealing with murder, as differs from felony murder which I have distinguished for you. *You, as jurors, may determine, on the basis of the facts presented, that the defendant intended to cause the death of Mr. Annunziata,* but the State is not required to prove that, in what we know and what is charged here, as felony murder." (Emphasis added.)

intended to kill the victim, even if they were not convinced that he had intended to commit the underlying robbery, as charged in the indictment. This claim is without merit. Immediately after the portion of the charge of which the defendant complains, the trial court correctly charged the jury that "it is only required that the State prove beyond a reasonable doubt that the defendant committed or attempted to commit robbery" and that in order to commit robbery "the only evidence of intention on the part of the defendant that the State must establish beyond a reasonable doubt is intent to deprive Mr. Annunziata of his property, or to appropriate his property to the defendant's use." In light of the charge as a whole, the trial court's statement that the jury might, but need not, find that the defendant had intended to kill did not dilute the state's burden to prove that the defendant intended to steal.

The defendant's final challenge to the jury charge is that the trial court erred in giving a "Chip Smith"[16] charge without qualifying the charge with language reminding the jury that they must, in the last analysis, vote their own convictions.[17] This court has repeatedly upheld the "Chip Smith" charge using the same or similar language to that given in this case. See *State* v. *Avcollie,* 188 Conn. 626, 641, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed.

---

[16] *State* v. *Smith,* 49 Conn. 376 (1881); cf. *Allen* v. *United States,* 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

[17] The trial court charged the jury as follows: "It is true, of course, that the verdict to which a juror agrees must be his or her own conclusion and not mere acquiescence in the conclusion of his or her fellows. However, that does not mean that each juror should pursue his or her own deliberations and judgment without regard for the arguments and conclusions of his or her fellows or that, having reached a conclusion, he or she should obstinately adhere to it without a conscientious effort to test its validity by other views entertained by other jurors equally wise and justly resolved to do their duty.

"In short, the process of jury deliberation requires your mutual interchange and consideration of views."

2d 299 (1983); *State* v. *Stankowski,* 184 Conn. 121, 147–48, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981), and cases cited. We adhere to the rule of our prior cases and find no error.

## V

The defendant's final claim is that the trial court erred in denying his motion to disqualify all prosecutors for the judicial district of New Haven. This court has previously rejected the defendant's claim. *State* v. *Jones,* 180 Conn. 443, 457, 429 A.2d 936 (1980). The basis for the motion was the prior representation of the defendant by a law firm of which Chief Assistant State's Attorney Richard Sperandeo was a partner. During the course of that prior litigation, involving a childhood head injury to the defendant, Attorney Sperandeo received confidential information from the defendant which bore on the defendant's insanity defense in this case. On the defendant's interlocutory appeal, we held that Sperandeo, himself, must be disqualified. *State* v. *Jones,* supra, 451–52. Nevertheless, we upheld the trial court's denial of the defendant's motion to disqualify all of the other prosecutors for the judicial district. Id., 457. The defendant has pointed to no occurrence at trial that would require us now to reach a different conclusion. We therefore adhere to our prior decision.

There is no error.

In this opinion the other judges concurred.