ANTHONY BRUNETTI *v.* COMMISSIONER
OF CORRECTION
(AC 32058)

DiPentima, C. J., and Alvord and West, Js.

Argued October 20, 2011—officially released March 13, 2012

*Bradford Buchta*, assistant public defender, for the appellant (petitioner).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

WEST, J. The petitioner, Anthony Brunetti, appeals following the habeas court's denial of his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court's finding that his mother took no position regarding consent to the search of his home by the police was clearly erroneous. Additionally, the petitioner claims that the court incorrectly concluded that his constitutional claim of unlawful search and seizure was procedurally defaulted. The petitioner finally argues that the court improperly rejected his claim that the procedural default was excused by (1) the ineffective assistance of trial counsel and (2) the novelty of the petitioner's constitutional claim. We affirm the judgment of the habeas court.

The relevant facts related to the underlying conviction were set forth by our Supreme Court in a decision

affirming the petitioner's conviction; see *State* v. *Brunetti*, 279 Conn. 39, 43–46, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007); which were set forth in the habeas court's memorandum of decision. "On the evening of June 23, 2000, thirty-five year old Doris Crain (victim) left her house and walked to Sonny's Bar on Campbell Avenue in West Haven. After the victim left the bar, she encountered the nineteen year old [petitioner] near the intersection of Campbell Avenue and Main Street. The victim approached the [petitioner] and asked whether he had any marijuana. The [petitioner] replied that he did and asked the victim to smoke with him behind the Washington Avenue Magnet School. After sharing a marijuana cigarette, the [petitioner] and the victim began kissing and engaging in sexual foreplay. After a short time, the [petitioner] and the victim partially removed their clothing, laid on the ground and began engaging in sexual intercourse. After having intercourse for about fifteen minutes, the victim asked the [petitioner] to stop because the sexual activity was hurting her. The [petitioner] ignored the victim's request and he continued until he reached an orgasm. After the intercourse ended, the victim got up, cursed at the [petitioner] and told him she was going to call the police. In response to the victim's threat, the [petitioner] grabbed the victim in a chokehold, punched her in the head, dragged her by her hair, and then by her feet, across the ground, and repeatedly struck her over the head with an empty glass bottle. The [petitioner] then left the victim's body in the high grass behind the school, throwing her clothing and the bottle nearby. As he left the school area, the [petitioner] walked past Jerrell Credle, Mike Banores, Jose Rivera and Michael Scott, who were seated at a picnic table on the school grounds. Credle recognized and greeted the [petitioner]. The [petitioner] acknowledged Credle, but did not stop to talk to him or the

others, and continued to his home at 208 Center Street, where he lived with his parents.

"Following the discovery of the victim's body the next day, the West Haven police department obtained information suggesting that the [petitioner] might be involved in the victim's murder. [Detective] Anthony Buglione [of the major crime unit of the Connecticut state police] and [Detective] Joseph Biondi [of the West Haven police department] (detectives) went to the [petitioner's] home to question the [petitioner]. The detectives approached the [petitioner's] parents, who were sitting on the front porch of their home, and asked to speak with the [petitioner]. Anthony Brunetti, Sr., the [petitioner's] father, went inside the house to find the [petitioner] while the detectives remained outside with the [petitioner's] mother, Dawn Brunetti. The [petitioner] emerged from the Brunetti home with his father ten to fifteen minutes later. The detectives then told the [petitioner] that they wanted to bring him to the West Haven police department for questioning and asked him to produce the clothes he had worn the previous evening. The [petitioner] retrieved some clothing from his bedroom, and the detectives then drove the [petitioner] to the police station for questioning. The [petitioner's] parents followed the detectives to the police station in their own car.

"At the police station, the detectives questioned the [petitioner] in an interrogation room, while the [petitioner's] parents remained in the station's waiting area. Sometime during the questioning, Detective James Sweetman of the West Haven police department and [Detective] Mark Testoni [of the Connecticut state police] approached the [petitioner's] parents and asked them to sign a consent form to allow the West Haven police to search the Brunetti residence. The [petitioner's] father signed the form but the [petitioner's] mother refused to sign the form. The [petitioner's] parents then

left the police station to let the police into their home to conduct the search while the [petitioner] remained at the station with the detectives. During the search of the home, the police looked inside the washing machine and found several items of recently washed clothing, including a pair of sweatpants, two tank tops and a towel. The sweatpants and towel exhibited bleach-like stains, and one of the tank tops exhibited reddish-brown blood-like stains. When . . . Buglione, who was at the police station questioning the [petitioner], learned of this discovery, he told the [petitioner] and asked him to elaborate. The [petitioner] then became upset and requested a Bible. The detectives subsequently issued *Miranda* warnings to the [petitioner], who proceeded to give an inculpatory statement to the detectives, describing in detail the manner in which he had murdered the victim." (Internal quotation marks omitted.)

The petitioner was charged with murder in violation of General Statutes § 53a-54a. Subsequently, the petitioner was convicted following a jury trial and was sentenced to sixty years imprisonment. On direct appeal, the petitioner claimed that the court improperly admitted physical evidence unlawfully seized from his home by the police because his mother had refused to consent to the search. Our Supreme Court concluded that the search of the petitioner's home violated article first, § 7, of our state constitution, holding that "the police must obtain the consent of all joint occupants who are present when consent is sought in order for a search by consent to be valid." *State* v. *Brunetti*, 276 Conn. 40, 52, 883 A.2d 1167 (2005). The court reversed the judgment of conviction and remanded the case for a new trial. Id., 65. The state then filed a motion for reconsideration en banc, which was granted. *State* v. *Brunetti*, supra, 279 Conn. 42. Upon reconsideration, the Supreme Court vacated and superseded its decision, holding that the petitioner was not entitled to review

of his unpreserved search and seizure claim because he failed to provide an adequate record for review under the first prong of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and affirmed the petitioner's conviction. *State* v. *Brunetti*, supra, 42–43.

The petitioner filed an amended three count petition for a writ of habeas corpus on September 30, 2008. In counts one and two, the petitioner claimed that the search and seizure of evidence from his home was unlawful under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution, respectively. In the third count, the petitioner claimed ineffective assistance of counsel.

Following a habeas trial, the court denied the petition for a writ of habeas corpus. The court found that the petitioner was procedurally defaulted from raising his constitutional claims for the first time on habeas review. The court rejected both of the petitioner's arguments that his default was excused by the ineffective assistance of counsel or, in the alternative, the alleged novelty of his constitutional claim that "his mother's refusal to consent rendered the search of his home unlawful." The court also rejected, on its merits, the petitioner's claim of ineffective assistance of counsel. The court granted the petitioner's petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

The petitioner raises two claims on appeal. The petitioner first argues that the habeas court's finding that the petitioner's mother "took no clear position regarding" consent to search the family home was clearly erroneous. Second, the petitioner asserts that the court improperly rejected both excuses for his procedural default. He claims that the court improperly rejected his claim of ineffective assistance of counsel regarding his trial counsel's failure to create an adequate record

regarding the petitioner's mother's lack of consent to search the family home and failing to file a motion to suppress the evidence seized from the home. The petitioner claims that both of those failures by his counsel prejudiced the outcome of his criminal trial. Alternatively, the petitioner argues that the court improperly rejected his argument that his unlawful search and seizure claim was sufficiently novel to excuse his procedural default.

## I

The petitioner first argues that the court's finding that his mother "took no clear position regarding" consent to the search the family home was clearly erroneous. The standard of review for a habeas court's findings of fact is well settled. "To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 838, 947 A.2d 7, cert. denied, 288 Conn. 908, 953 A.2d 652 (2008). "Whether a [person] voluntarily has consented to a search is a question of fact to be determined by the trial court from the totality of the circumstances based on the evidence that it deems credible along with the reasonable inferences that can be drawn therefrom. . . . Whether there was valid consent to a search is a factual question that will not be lightly overturned on appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 699, 817 A.2d 76 (2003).

The petitioner's mother declined to sign a consent form to search the family home when asked by the

officers at the police station where the petitioner was in custody. She testified that she disagreed with the search and told the officers that she did not want them in the family home, but she did not prevent the police from conducting the search because the police informed her that her signature was not needed. She testified that she disagreed with her husband's decision to sign the consent form. On the basis of this testimony, the court found that "[i]t is not clear whether his mother affirmatively refused to consent to the search, as alleged by the petitioner. What is clear is that she refused to sign the consent form presented to her by the police but 'the act of declining to *sign* a consent to search form is not tantamount to a refusal to *consent* to the search . . . .' (Emphasis in original.) [*State* v. *Brunetti*, supra, 279 Conn. 56]. Based on her testimony at the habeas trial, this court finds that not wanting to have any part in the search of [the family] home, she took no clear position regarding it."

From the evidence before the habeas court, it is clear that the petitioner's mother refused to sign the consent form, however, we cannot conclude that the court's finding that it was *unclear* as to whether she affirmatively refused to consent to the search was clearly erroneous. The petitioner's mother expressed her disagreement with her husband's consent to the search and told the officers that she did not want them in the family home. Other than this expression of disagreement, the petitioner failed to show that his mother affirmatively refused to consent to a search of the home. Based on the totality of the facts before the habeas court, we cannot say that the court's finding that the petitioner's mother took "no clear position regarding" the search of the family home was clearly erroneous.

## II

The petitioner conceded at the habeas trial that he did not raise at his criminal trial the constitutional claims

in counts one and two of his petition. To excuse this procedural default, the petitioner claimed the ineffective assistance of trial counsel or, in the alternative, the novelty of the unlawful search and seizure claim at the time of his criminal trial.

"The appropriate standard for reviewability of habeas claims that were not properly raised at trial . . . or on direct appeal . . . because of a procedural default is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance . . . . Therefore, attorney error short of ineffective assistance of counsel does not adequately excuse compliance with our rules of [trial and] appellate procedure." (Citations omitted; internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 40, 779 A.2d 80 (2001); see also *Correia* v. *Rowland*, 263 Conn. 453, 462, 820 A.2d 1009 (2003). Additionally, "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed* v. *Ross*, 468 U.S. 1, 16, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984). We now address each of the petitioner's excuses for his procedural default with regard to his constitutional claim.

A

The petitioner first argues that the court improperly rejected his claim of ineffective assistance of counsel. Specifically, the petitioner claims that his trial counsel, Vito Castignoli, was deficient for (1) failing to create

an adequate record of the petitioner's mother's refusal to consent to a search of the petitioner's home and (2) failing to file a motion to suppress the evidence seized by police following the search of the petitioner's home. We are not persuaded.

"Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by [an appellate] court . . . ." *William B.* v. *Commissioner of Correction*, 128 Conn. App. 478, 488, 17 A.3d 522, cert. denied, 302 Conn. 912, 27 A.3d 371 (2011). "To determine whether the petitioner has demonstrated that counsel's performance was ineffective, we apply the two part test established in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). . . . According to *Strickland*, [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied . . . . Because the petitioner must satisfy both prongs of the *Strickland* test to prevail on a habeas corpus petition, this court may dispose of the petitioner's claim if he fails to meet either prong. . . . [A] reviewing court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one . . . ." (Citations omitted; internal quotation marks omitted.) *William B.* v. *Commissioner of Correction*, supra, 488–89.

"[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 62–63, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011).

When examining the performance prong, we note that "the petitioner must show that [counsel's] representation fell below an objective standard of reasonableness in order to establish ineffective performance. . . . In other words, the petitioner must demonstrate that [counsel's] representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . In analyzing [counsel's] performance, we indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . The petitioner bears the burden of overcoming this presumption." (Citations omitted; internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d

160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006).

At the habeas trial, Castignoli testified that his focus was on suppressing the petitioner's confession and suppression of the evidence seized by the police as a result of the search of the petitioner's home. Castignoli testified that he believed that his best strategy for suppressing the inculpatory evidence found at the petitioner's home was to establish that the consent of the petitioner's father was not voluntary.[1] Castignoli testified that he determined that to be the best strategy after researching the federal and state case law which, at the time, indicated that one cohabitant could consent to the search of a home, although he found no cases directly on point where both cohabitants were present and one did not consent. Although the trial court and Supreme Court rejected Castignoli's argument that the petitioner's father's consent was involuntary, it was still a valid claim under *State* v. *Jones*, 193 Conn. 70, 80, 475 A.2d 1087 (1984).

Additionally, we agree that Castignoli's determination not to base any suppression claim on the petitioner's mother's lack of consent was reasonable. The court found that "[n]otwithstanding the existence of persuasive authority from other jurisdictions, the claim was, and remains one, of first impression in Connecticut." "[T]o perform effectively, counsel need not recognize and raise every conceivable constitutional claim. . . . Moreover, numerous state and federal courts have concluded that counsel's failure to advance novel legal

---

[1] Castignoli's motion to suppress the evidence seized at the home was premised on the involuntary consent of the petitioner's father. The petitioner's father testified that he felt compelled to sign the consent form after speaking with his brother, a police detective in West Haven. Castignoli argued that under *State* v. *Jones*, 193 Conn. 70, 80, 475 A.2d 1087 (1984), "the intimation that a warrant will automatically issue is as inherently coercive as the announcement of an invalid warrant."

theories or arguments does not constitute ineffective performance. Nor is counsel required to change then-existing law to provide effective representation. . . . Counsel instead performs effectively when he elects to maneuver within the existing law, declining to present untested . . . legal theories." (Citations omitted; internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, supra, 275 Conn. 460–62. Both the evidence presented at the habeas trial and the petitioner's arguments are insufficient to overcome the strong presumption of correctness afforded to the strategic decision made by trial counsel. See, e.g., *Stepney* v. *Commissioner of Correction*, 129 Conn. App. 364, 368, 19 A.2d 1262 (2011). On the basis of its findings, the court properly concluded that the petitioner failed to prove ineffective assistance of counsel. Because we agree that it was reasonable for Castignoli not to move to suppress on the ground of the petitioner's mother's refusal to consent, we likewise conclude that Castignoli cannot be held to have performed deficiently for failing to make an adequate record of the mother's refusal to consent to the search of the home.[2]

## B

Next, the petitioner claims that his constitutional claim was sufficiently novel to excuse his procedural default. We disagree. Whether a claim has a reasonable basis in existing law is a question of law; accordingly, we exercise plenary review over the habeas court's ruling. See *Correia* v. *Rowland*, supra, 263 Conn. 462. "[T]he United States Supreme Court has held that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable . . . procedures . . . . In so holding,

---

[2] Because Castignoli did not render deficient performance, we need not reach the prejudice prong of the *Strickland* test. See *William B.* v. *Commissioner of Correction*, supra, 128 Conn. App. 489.

the court noted that the cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. And the *failure of counsel to raise a constitutional issue reasonably unknown to him* is one situation in which the requirement is met." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 463. "The court stated that, by definition, an attorney would not have had a reasonable basis for developing that theory if the new constitutional rule arose out of one of three situations: (1) the [explicit] overrul[ing] of a court precedent; (2) a decision overtur[ning] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved; or (3) a decision that may disapprov[e] a practice this Court arguably has sanctioned in prior cases." (Internal quotation marks omitted.) Id., 464.

In the present case, the petitioner argues that because the court found that Castignoli's failure to make a constitutional claim of first impression did not constitute deficient performance, then the court should have found sufficient cause to excuse the petitioner's default because the claim was novel at the time of the petitioner's trial. Although the constitutional claim would have been one of first impression if made at the trial court, that does not lead us to conclude automatically that the claim is so novel as to excuse the procedural default. As the habeas court noted, the petitioner initially raised his constitutional claim on direct appeal in 2003, however, the petitioner's trial was only one year before in 2002 and there were no relevant developments in the case law during that time. Subsequently, the United States Supreme Court decided *Georgia* v. *Randolph*, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006), holding that "a physically present inhabitant's express refusal of consent to a police search is dispositive as

to him, regardless of the consent of a fellow occupant." Id., 122–23. The habeas court distinguished *Randolph*, noting that the petitioner was not physically present at the time that consent was given. Nevertheless, "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith* v. *Murray*, 477 U.S. 527, 537, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 422, 589 A.2d 1214 (1991).

In *Johnson,* our Supreme Court determined that because there was a "reasonable basis" at the time of the petitioner's trial for making the constitutional claim, the petitioner was procedurally defaulted from making the same claim on habeas review. Id. In the present case, the petitioner acknowledges that three states have recognized the rights of present, objecting cohabitants since at least the 1970s. Therefore, there was a "reasonable basis" in the case law at the time of the petitioner's trial to make such a constitutional claim. Additionally, the petitioner's constitutional claim does not fall under one of the three categories articulated for a "new constitutional rule" in *Correia* v. *Rowland,* supra, 263 Conn. 464. Because there was a "reasonable basis" for the claim, the claim was "available" to Castignoli at the time of the default, but he failed to make it. We conclude that the petitioner has failed to show that his constitutional claim was so novel as to excuse his procedural default.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] Because the petitioner has failed to establish cause for his procedural default, we need not address the prejudice prong of the cause and prejudice

test. See *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 191, 982 A.2d 620 (2009).