STATE OF CONNECTICUT *v.* JOSEPH DISTEFANO
(3004)

DUPONT, C. J., BORDEN and DALY, Js.

Argued April 9—decision released June 17, 1986

*James M. S. Ullman,* for the appellant (defendant).

*Robert J. O'Brien,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from a judgment of conviction, following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). He claims as error (1) the denial of his motion to suppress identification testimony and certain items of evidence which were seized from his residence, and the subsequent introduction of that testimony and those items into evidence at trial,[1] (2) the denial of his motion for judgment of acquittal, and (3) the trial court's instructions to the jury regarding circumstantial evidence. We find no error. The facts which are pertinent to each issue will be set forth as each issue is discussed.

I

MOTION TO SUPPRESS AND EVIDENTIARY RULINGS

The defendant claims that the trial court erred by denying his motion to suppress, inter alia, the testimony of Mary Dube, a witness who had identified the defendant from a photo array as a man she saw leaving the scene of the crime. Dube testified at the suppression hearing that on the morning of August 2, 1982, she walked with her mother to the Jefferson Federal Savings Bank in Meriden. Her mother entered the bank while she remained standing on a nearby street corner. From that vantage point, Dube saw a man running away from the bank carrying loose bundles of

---

[1] The defendant also claims on appeal that the trial court erred in admitting certain hearsay evidence under the business entry rule. See General Statutes § 52-180. We decline to review this claim, however, because it was not included in the defendant's preliminary statement of the issues as required by Practice Book § 3012. Our limited review of the record to insure that no injustice was done indicates that the trial court's ruling fully complied with the statutory requirements.

money and dropping money as he fled. The man crossed the street, passing within a close distance of where Dube stood, and she saw his face from the right side. She testified that she watched him as he ran for approximately two to three minutes. She described him as a thin white male with dark hair, and approximately five feet five inches tall.

A week later, the police presented Dube with a photo array containing seven or eight frontal facial views of various white males. From that array she selected two photographs, one of which was the defendant's. She told the investigating officer that she would be able to make a positive identification of the man if she saw a profile view. The officer subsequently showed her additional profile photographs of the defendant, one of which she then positively identified. She testified that she had no doubt that he was the man she saw running away from the bank.

The trial court denied the motion to suppress Dube's testimony, and her testimony and the photograph were later introduced into evidence at trial. She did not, however, make an in-court identification of the defendant. On appeal, the defendant claims that the trial court erred because the identification process was unnecessarily suggestive and that Dube's identification was unreliable. We disagree.

"In order to determine whether the identification procedures violated the defendant's due process rights, a case by case inquiry must be made as to (1) whether the identification procedures were unnecessarily suggestive, and, if so, (2) whether the identification was nevertheless reliable based upon an examination of the totality of the circumstances." *State* v. *Frazier*, 7 Conn. App. 27, 34, 507 A.2d 509 (1986). The defendant bears the burden of making the requisite showings. Id. In this case, his claim falls far short of the mark.

The defendant claims that the investigating officer should have procured and displayed profile photographs of the second individual whose picture Dube also selected from the first array. We need not decide whether showing Dube only the defendant's profile photographs after her request was unnecessarily suggestive. Even if we assume that it was, it is clear that Dube's identification of the defendant's photograph was "made under circumstances carrying sufficient objective *indicia of reliability* to permit [it] into evidence . . . . " (Emphasis in original.) *State* v. *Mitchell*, 7 Conn. App. 46, 65, 507 A.2d 1017 (1986).

The defendant also claims that the trial court erred by denying his motion to suppress a number of .25 caliber cartridges which were seized from his residence. He claims that the seizure was unlawful and that the cartridges were, therefore, erroneously introduced into evidence at trial. We disagree.

The police obtained a warrant to search the defendant's premises for a number of items, including a silver plated pistol which allegedly was used in the robbery. In the course of their search, the police located and seized the pistol and a number of .25 caliber cartridges which matched the pistol. The defendant moved to suppress a number of items including the cartridges. The trial court granted the motion as to certain items but later reversed this decision and denied the motion as to the cartridges. The defendant claims that because the warrant only specified that the search pertained to the pistol, the seizure of the cartridges exceeded the scope of the warrant. He also claims that because several witnesses testified that the robber announced after the robbery that the gun was unloaded, the evidence of the cartridges was irrelevant and highly prejudicial. These claims lack merit.

" ' "[W]here a police officer has a warrant to search a given area for specified objects, and in the course of

the search comes across some other article of incriminating character, the property is seizable under the plain view doctrine." ' " (Citations omitted.) *State* v. *Pepe,* 176 Conn. 75, 79, 405 A.2d 51 (1978). "A plain view seizure is authorized if (1) the police intrusion that leads up to the view is legal, (2) the discovery of the evidence is inadvertent and (3) the police have probable cause to believe there is a reasonable relation between the evidence seized and the criminal behavior under investigation." *State* v. *Graham,* 186 Conn. 437, 443–44, 441 A.2d 857 (1982). The defendant does not challenge the legality of the police intrusion or the inadvertence of the discovery of the cartridges. He claims, however, that the cartridges were not properly seized because they were not articles of an incriminating nature.

This claim is meritless principally because it was merely necessary that the police "have probable cause to believe there is a reasonable relation between the [cartridges] and the [armed robbery] under investigation." Id. Probable cause was clearly established once the police discovered the cartridges and determined that they matched the pistol which was allegedly used during the robbery. The cartridges, therefore, were properly seized under the plain view doctrine.

The defendant's alternative claim is that the trial court erred by allowing the state to introduce the cartridges into evidence at trial. In this regard, the defendant claims that the evidence of the cartridges was irrelevant because he was charged with a violation of General Statutes § 53a-134 (a) (4), which is committed if a person "displays or threatens the use of what he represents by his words or conduct to be a pistol . . . or other firearm . . . . " The defendant asserts that because the essential factual element of the crime charged was whether he represented that the gun was a pistol or other firearm, the cartridges were irrele-

vant to this factual issue. In addition, he claims that this evidence irreparably prejudiced his defense. We disagree.

"The trial court has broad discretion in ruling on questions of relevancy." *State* v. *Aspinall,* 6 Conn. App. 546, 553, 506 A.2d 1063 (1986). Contrary to the defendant's argument, it was well within the trial court's discretion to conclude that the cartridges were relevant and admissible. This evidence was particularly probative of whether the defendant possessed the means to commit the crime charged. See *State* v. *Villafane,* 171 Conn. 644, 676, 372 A.2d 82, cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1976). Although "[t]here are situations where the potential prejudicial effect of relevant evidence would suggest its exclusion"; *State* v. *DeMatteo,* 186 Conn. 696, 702, 443 A.2d 915 (1982); this is not such a case. The trial court did not abuse its discretion in admitting the cartridges into evidence.

## II

### SUFFICIENCY OF EVIDENCE

We next consider the defendant's claim that the evidence was insufficient for the jury reasonably to find him guilty of each element of the crime of robbery in the first degree. "When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . We then determine whether ' "the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . " ' " (Citations omitted.) *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985).

The state produced twenty-two witnesses, a number of whom testified that they were in or near the Jefferson Federal Savings Bank in Meriden on August 2, 1982, when it was robbed. These witnesses consistently described the robber as a white male who met the defendant's description and testified that he used a silver handgun. He took money from three bank tellers and fled out the side entrance by which he had entered the bank. Bank photos revealed that he was wearing a long sleeved sweater with a dark stripe down the sleeve. Before the robbery, two witnesses, Christine Melzmus and Cindy LaFlamme, had followed a man fitting the description of the robber to an area just behind the side entrance of the bank where he hid behind a bush. They saw him putting on a sweater and identified the sweater on the man in the bank photograph as the sweater they saw. Melzmus recognized the man she saw as "Joe," a cousin of her former boyfriend. Both Melzmus and LaFlamme identified photographs of the defendant as this man, and Melzmus also made an in-court identification of him.

As previously indicated, Dube identified a photograph of the defendant as the man she had seen fleeing from the bank and dropping money. The robber fled in the same direction as he had entered the bank. Money that was taken during the robbery was found in the intersection where Melzmus and LaFlamme had seen the defendant before the robbery. In addition to the silver handgun and cartridges which were seized from the defendant's apartment, the police also seized a newspaper clipping of a report of the bank robbery. The clipping was hidden on top of ceiling tiles in a suspended ceiling in one room of the defendant's apartment. The state also introduced the testimony of the manager of a gun shop that the defendant's wife had purchased the handgun from that shop.

The defendant produced eight alibi witnesses, six of whom were related to him or his wife. Five of the defendant's relatives by marriage testified to seeing or talking with the defendant at or about the time of the bank robbery, namely between 11:00 a.m. and noon. The defendant's landlord and his wife's employer testified essentially to the same effect. The defendant's wife testified that the defendant brought her lunch from a fast food restaurant at 12:15 p.m.

The defendant claims that this "barrage of alibi witnesses" outweighed the state's "inconclusive patchwork of circumstantial evidence." We disagree. Viewing the evidence in the light most favorable to sustaining the jury's verdict; *State* v. *Braxton,* supra; we conclude that the jury could reasonably have found the defendant's guilt established beyond a reasonable doubt. Id.

We also disagree with the defendant's claim that the state failed to produce sufficient evidence from which the jury could find that the gun used by the defendant was a "pistol" within the meaning of General Statutes § 53a-134 (a) (4). In particular, he claims that the state failed to produce evidence from which the jury could find that the barrel of the gun was under twelve inches long. See General Statutes § 53a-3 (18) ("pistol" defined as "any firearm having a barrel less than twelve inches" long). We agree with the state that it was under no obligation to prove, pursuant to General Statutes § 53a-134 (a) (4), that the defendant possessed a pistol. It was sufficient for the state to prove that the defendant "represent[ed] by his words or conduct" that he possessed "a pistol . . . or other firearm." General Statutes § 53a-134 (a) (4). Our review of the record indicates that the evidence unequivocally established this element and all other elements of the offense charged. The evidence was sufficient to prove the defendant's guilt

beyond a reasonable doubt, and the trial court did not err by denying the defendant's motion for judgment of acquittal.

## III

### JURY INSTRUCTION

The final claim of error in this appeal is the claim that the trial court erred in its instructions to the jury with regard to circumstantial evidence. The defendant did not take exception to the trial court's instruction, and he now seeks review of this claim under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1976). This claim, however, does not merit an *Evans* review.

The challenged portion of the trial court's instructions pertained to the court's discussion of the nature and use of circumstantial evidence. The trial court stated, inter alia, that "[c]ircumstantial evidence is not only sufficient but may also be more certain, satisfying and persuasive than direct evidence." The defendant claims, for the first time on appeal, that the trial court committed reversible error by suggesting that there is a distinction in law between direct evidence and circumstantial evidence. See *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984) (no distinction between direct and circumstantial evidence as far as probative force is concerned). This claim, however, is not "sufficiently similar to the kind of burden-shifting claim for which the Supreme Court has afforded *Evans* review . . . [such] that we will invoke our 'principled appellate discretion' . . . and review it." (Citations omitted.) *State* v. *Farrar,* 7 Conn. App. 149, 153 n.3, 508 A.2d 49 (1986).

The instruction in question did not constitute a failure of the court adequately to define an essential ele-

ment of the offense. *State* v. *Grant,* 6 Conn. App. 24, 27–32, 502 A.2d 945 (1986). At most, the instruction reflects the trial court's attempt to clarify the principles pertaining to the use of circumstantial evidence for the benefit of a jury of lay persons who may have needed some assistance in applying this commonly used but technically elusive concept. See *State* v. *Farrar,* supra 152–56 (conflict in jury instructions re circumstantial evidence discussed). In short, the record does not adequately " '[support] the defendant's claim that the charge raises a question of fundamental constitutional dimension . . . .' " (Citations omitted.) *State* v. *Grant,* supra, 27. We therefore decline to review it.

There is no error.

In this opinion the other judges concurred.