STATE OF CONNECTICUT *v.* EDWARD L. REAGAN
(4774)

HULL, DALY and BIELUCH, Js.

Argued May 14—decision released July 14, 1987

*M. Hatcher Norris,* with whom, on the brief, was *Stephanie Clarke,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, was *Robert D'Andrea,* assistant state's attorney, for the appellee (state).

HULL, J. The defendant appeals from his conviction of the crimes of sale of a narcotic substance in violation of General Statutes § 21a-277 (a), and illegal possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-279 (a). The conviction followed his conditional pleas of nolo contendere which was entered, pursuant to General Statutes § 54-94a,[1] after the trial court denied his motion to suppress. The defendant claims on appeal that the trial court erred in denying that motion.

At the hearing on the defendant's motion to suppress, the trial court found the following relevant facts. In the spring of 1985, the defendant and his wife moved into a house on Pettee Street in Lakeville, Connecticut. The defendant's home was next door to a residence occupied by Rosina Rossier. Within one week of the defendant's arrival, Rossier noticed an increase in traffic on the dead end street.[2] She witnessed many cars and a few trucks stop by the Reagan house for approximately five to ten minutes. This activity, combined

---

[1] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] The defendant contends that he was operating an auto parts business out of his house.

with discussions concerning the same with neighbors, led Rossier to believe that Reagan was "dealing with drugs." Rossier subsequently reported her suspicions to the first selectman of Lakeville, who in turn contacted the Connecticut state police.

On May 24, 1985, the state police began a surveillance operation of the defendant's home. At approximately 7:30 p.m., they observed a car pull into the driveway. Its occupant stayed at the home a short time before leaving. Soon thereafter, a second car pulled into the driveway. An individual later identified as David Earl Jones entered the home after knocking. A short time later, both Jones and the defendant left the house and walked to the back yard. The defendant reached into his pocket and pulled out a small packet, which he handed to Jones. Jones in turn handed a slip of paper to the defendant, which the state trooper identified as a check, and then left the house. Before the officers left their post outside the defendant's house, a third car pulled up, a young woman went into the house and then left after less than one minute.

Another state trooper was notified by radio of the activities, and subsequently conducted a stop and search of Jones' car at a nearby gas station. Jones was found to have marihuana in his car and a half gram of cocaine in a cigarette pack. He was then placed under arrest.

During the search and arrest of Jones at the gas station, one person was standing next to Jones, and three others were watching from a distance of approximately ten feet. The trooper testified that he also noticed the woman whose car he had seen at the defendant's home, stopped at the corner, watching the proceedings.

After the arrest, application for a search and seizure warrant was made. One of the troopers, Sergeant Brian Acker, testified, however, that he knew it would take

at least three hours to obtain the warrant. He decided that there was a significant risk the defendant would be notified of Jones' arrest and would destroy any incriminating evidence. He testified that "it had been my experience that in a community such as [this] there is a great deal of conversation on the streets as to incidents such as this taking place." Acker consequently decided that it was necessary to enter and secure the defendant's residence until the warrant could be obtained.

Acker and Trooper John Merullo, both in plainclothes, drove up to the house in an unmarked car and knocked on the back door. The defendant's wife came to the door. Acker testified that, after he asked if "Ed" was in, she responded "come on in" and led them upstairs.[3]

At the top of the stairs, the defendant's wife stopped in Acker's way so he could proceed no further. Acker "just worked, kind of pushed [his] way by gently and went into that bedroom." Upon entering the bedroom, Acker saw the defendant with his back to the door. He testified that he observed a bowl on a small table in the corner of the room which contained a powdery white substance. He told the defendant not to move, that he was under arrest.

Everyone in the home was ordered to the first floor while Acker awaited the search warrant. After the warrant arrived, a search was conducted and the trooper seized $573 in cash, the white substance and some drug paraphernalia.

Prior to trial, the defendant moved to suppress all the evidence obtained during the search as fruit of an unlawful warrantless search and arrest. The trial court

---

[3] This was the only testimony regarding the incident. Neither the defendant nor his wife took the stand at the suppression hearing.

denied the motion, finding that the warrantless entry was justified by exigent circumstances. The state claims in this appeal that the warrantless search of the house was also justified as a consensual search, and under the inevitable discovery doctrine. Although neither party addressed the issues of consensual entry or inevitable discovery at the suppression hearing, the trial court noted in its memorandum that the defendant's wife had admitted the police into the house voluntarily.[4]

## I

The defendant claims that no consent was given to permit the warrantless entry of his home. He contends that his wife did not give free and voluntary consent to Acker in that (1) she did not know he was a police officer, and (2) he forced his way into the bedroom "after she attempted to delay or prevent his entry into the bedroom."

It is well recognized that a valid consent to enter and search a home is an exception to the warrant requirement. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State* v. *Jones,* 193 Conn. 70, 78–79, 475 A.2d 1087 (1984); *State* v. *Harris,* 10 Conn. App. 217, 224, 522 A.2d 323 (1987). To be valid, consent must be voluntarily given, not the product of coercion or acquiescence to a claim of lawful authority. *State* v. *Zindros,* 189 Conn. 228, 243–44, 456 A.2d 288 (1983); *State* v. *Cobbs,* 7 Conn. App. 656, 659, 510 A.2d 213 (1986). In order for a third party's consent to a search to be valid, the consenting party must have common authority over the premises to be entered or searched. *State* v. *Jones,* supra, 80.[5]

---

[4] There was also testimomy at the suppression hearing that Mrs. Reagan voluntarily invited the officers into the house.

[5] The question of authority to consent to the search is not an issue in this case. We note only that the house and room were under the common authority of both the defendant and his wife. See *State* v. *Jones,* 193 Conn. 70, 79, 475 A.2d 1087 (1984); *State* v. *Harris,* 10 Conn. App. 217, 225, 522 A.2d 323 (1987).

We are faced with three subissues in this consent claim. The first is whether the consent by the defendant's wife was invalid in light of the fact that she was not aware that the persons to whom she gave consent to enter were policemen. The second question concerns the scope of her consent to search. The third question is whether her consent terminated by her action at the top of the staircase.

Our courts have recognized the legitimate need for law enforcement officials to conceal their identities at times. *Lewis* v. *United States,* 385 U.S. 206, 209–10 nn.5 and 6, 87 S. Ct. 424, 17 L. Ed. 2d 312 (1966). In situations where a plainclothes police officer, engaged in a criminal investigation, fails to disclose his identity and is voluntarily admitted into a home, courts find such entries consensual. *Lewis* v. *United States,* supra, 210–12; *United States* v. *Shigemura,* 682 F.2d 699, 706 (8th Cir. 1982); *United States* v. *Ressler,* 536 F.2d 208, 211–12 (7th Cir. 1976). In *Shigemura,* the police suspected that the defendant had stored stolen meat in his basement. An officer went to the house, knocked on the door and told the person who responded that "Eddie" (the defendant) had sent him to see the "stuff" in the basement. The officer was thereafter admitted to the house, and the eighth circuit upheld the consent as valid.

*United States* v. *Ressler,* supra, is factually similar to the present situation. In that case, plainclothes officers went to the defendant's home believing that he was illegally in possession of firearms. One of the officers asked for the defendant by his nickname, "Cory," thereby gaining admittance to the house where they received information later used to obtain a warrant. The seventh circuit upheld the entry, stating that "[a] person is expected to recognize his acquaintances and any information revealed to one who claims to be an acquaintance, but who in fact is not one, must be viewed

as exposed at the suspect's risk. . . . Furthermore, the type of misrepresentation here involves less deception on the part of the agent than the misrepresentations sanctioned in *Lewis* and in *Lopez* v. *United States,* 373 U.S. 427, 83 S. Ct. 1381, 10 L. Ed. 2d 462 (1963), where the agents obtained information by appearing to be participants in illegal transactions.'' (Citation omitted.) Id., 212.

Further, in *Lewis,* Chief Justice Warren, writing for the court, thought it relevant that the defendant had transformed his home into a "commercial center," where illegal buying and selling took place. The Supreme Court stated, without elaboration, that in such a situation, the defendant was not entitled to the same fourth amendment protections as he would be had he not been running a business from his home. *Lewis* v. *United States,* supra, 211. That language was cited approvingly in both *Shigemura* and *Ressler.* As in these three cases, the defendant in the present case had converted his home into a "commercial center" where unlawful business was transacted; therefore, his home was not entitled to greater sanctity than other places of business. See *Lewis* v. *United States,* supra, 211; *United States* v. *Shigemura,* supra, 706.

The defendant's wife invited the officers inside without asking who they were or why they wanted to see the defendant. They did not misrepresent their identities and did not coerce their way into the house. The police clearly obtained a voluntary consent to enter the defendant's house.

The remaining question concerns the limits of that consent. As a preliminary matter, we find that the entry into the bedroom was clearly within the scope of the consent given. From the limited record we have before us, we discern no explicit or implicit limits to the consent the defendant's wife gave the officers. See

*Mason* v. *Pulliam,* 557 F.2d 426, 428–29 (5th Cir. 1977); *State* v. *Gonzales,* 48 Wash. App. 388, 395, 731 P.2d 1101 (1986). To the contrary, the police were impliedly given consent to see "Ed," and that is all they did. Their action inside the house cannot be said to have exceeded the scope of the consent.

The final question is whether the fact that the defendant's wife stopped at the top of the stairs was an effective end to the valid consent. We find that it was not.

Whether a search remained within the boundaries of the consent is a question of fact to be determined from the totality of all the circumstances. *United States* v. *Sierra-Hernandez,* 581 F.2d 760, 764 (9th Cir.), cert. denied, 439 U.S. 936, 99 S. Ct. 333, 58 L. Ed. 2d 333 (1978). Acker testified that the defendant's wife stopped at the top of the stairs so that he had to pass by her to reach the bedroom. There was no other testimony regarding that incident. The defendant made no claim, either at trial or on appeal, that his wife's consent to enter the house was withdrawn. With no other testimony in the record, we find no withdrawal of consent simply because she stopped at the top of the stairs and Acker had to "push his way by gently." This is not a clear withdrawal of consent, as is seen in *Mason* v. *Pulliam, supra,* 428 (wherein the defendant stated "[t]he search is over. I am calling off the search"); or in *United States* v. *Bily,* 406 F. Sup. 726, 728, (E.D. Pa. 1975) (wherein the defendant stated, after giving consent to search: " '[t]hat's enough. I want you to stop.' "). We will not infer, absent some positive indication of withdrawal, that there was such a withdrawal. See *State* v. *Cobbs, supra,* 658–59. As we have determined that there was valid consent for the entry into the defendant's house, any plain view observations made were also justified. See *State* v. *Salz,* 8 Conn. App. 125, 135–36, 512 A.2d 921, cert. denied, 201 Conn. 807, 515 A.2d 380 (1986); *State* v. *DiStefano,* 7 Conn. App. 726, 730, 510 A.2d 995 (1986).

The defendant's remaining claims are that the warrantless search was not justified by exigent circumstances or under the inevitable discovery doctrine. In light of the fact that we have found the search justified as consensual, we need not reach the alternate grounds presented. See *Pepe* v. *New Britain,* 203 Conn. 281, 292, 524 A.2d 629 (1987); *Payne* v. *Robinson,* 10 Conn. App. 395, 404, 523 A.2d 917 (1987).

There is no error.

In this opinion the other judges concurred.