# STATE OF CONNECTICUT *v.* EDWARD L. REAGAN
## (13262)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, and SANTANIELLO, Js.

Argued May 6—decision released August 30, 1988

1

M. *Hatcher Norris,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, for the appellee (state).

CALLAHAN, J. The sole issue certified for review by this court from the decision of the Appellate Court in *State* v. *Reagan,* 11 Conn. App. 540, 528 A.2d 846 (1987), is: "Did the Appellate Court err in concluding from the transcript that the defendant's wife had consented to the officers' entry into his bedroom when the trial court had found that she had attempted to block their entry into that room?"

Prior to trial, the defendant moved to suppress, as the fruit of an illegal arrest and an unlawful search, "any and all tangible and intangible evidence . . . which may have been obtained either during or as a result of any such search and seizure. . . ." The trial court, *Kline, J.,* denied the motion to suppress and ruled that "[b]ased on the totality of the circumstances, I think there is probable cause for the police to make that very determination that there are exigent circumstances, that they were to go on the man's premises to make a warrantless arrest." On appeal, the Appellate Court affirmed the trial court's denial of the defend-

ant's motion to suppress not on exigent circumstance grounds but because it found that the defendant's wife had consented to the entry of the police into the defendant's house and bedroom. *State* v. *Reagan,* supra, 546–47. The Appellate Court also found that the plain view observations made by the police subsequent to their consensual entry were "justified." Id., 547. In light of these findings, the Appellate Court concluded that there was a valid consensual entry and refused to address the issues of whether the warrantless seizure of evidence was justified by either exigent circumstances or the inevitable discovery doctrine, calling them merely "alternate grounds presented." Id., 548. We find error.

We need not repeat the entire factual scenario set forth at length in the Appellate Court opinion. Id., 541–43. Briefly, the undisputed facts relevant to the issue certified for review are as follows: On May 24, 1985, based on information provided by a neighbor of the defendant, the Connecticut state police began a surveillance operation of the defendant's home located on Pettee Street in Lakeville. The same day, two of the surveilling officers observed what they believed to be a drug deal occurring between the defendant and David Earl Jones.[1] As Jones departed the defendant's home, the officers radioed their superior, Sergeant Brian Acker, who was in an unmarked car at the corner of Pettee Street and Route 44,[2] and informed him of what they had just observed. Subsequently, Jones drove past

---

[1] Sergeant Benjamin Pagoni and Detective John Merullo observed David Earl Jones drive up to the defendant's house, get out of his car and enter the house. Approximately five to ten minutes later, the defendant and Jones exited the house. The officers then observed Jones hand the defendant a slip of paper which appeared to be a check and then the defendant handed Jones a small packet.

[2] The only access to Pettee Street was from Route 44 because Pettee Street is a dead-end street.

Acker and pulled into a gas station on Route 44 just opposite Pettee Street. Apprehensive that Jones would transfer what they then suspected to be narcotics to a person at the gas station or destroy them, Acker and Detective James Caputo arrested Jones.

On the basis of the items recovered and information received from Jones, and concerned that people who had observed Jones' arrest would tip off the defendant, Acker decided to return to the defendant's home and attempt to gain access.[3] In pursuit of this goal, Acker, accompanied by Detective John Merullo, knocked on the back door of the defendant's house. The defendant's wife answered the door and, without identifying themselves, the officers, who were in plainclothes, asked if "Ed" was there. The defendant's wife "responded" and Acker entered the house, went through four rooms and followed her up a stairway to a "foyer" on the second floor.[4] There the defendant's wife positioned herself in front of Acker, making it difficult for him to pass. At that point, Acker "kind of pushed [his] way by gently and went into [the defendant's] bedroom." Upon entering, he found the defendant in the room and observed a white powdery substance in a bowl on a small table near the defendant. He then placed the defendant under arrest, seized a check drawn on the Jones Automotive account for $120 that was made payable to cash and transported the defendant to the state police barracks. Thereafter, the remaining occupants of the house were assembled

[3] In that interim, Acker sent Pagoni and Caputo to state police barracks B to book Jones and to obtain a search warrant for the defendant's home.

[4] The record is silent with regard to Merullo's actions after the defendant's wife answered the door. It appears from Acker's testimony that he alone entered the defendant's home. The only thing that Merullo's testimony reveals is that he was present when the defendant was arrested. Merullo gave no testimony regarding the circumstances surrounding the initial entry into the defendant's home.

in a room on the first floor and detained until the arrival of a search warrant.

Prior to trial, the defendant moved to suppress the evidence seized when he was arrested as the fruit of an illegal arrest and an unlawful search and seizure of his person, home and curtilage. During the suppression hearing, the state, as well as the defendant, focused their attention on "exigent circumstances" as the sole justification for the warrantless entry of the defendant's house, the arrest of the defendant, and the subsequent seizure of evidence. In denying the defendant's motion to suppress, the trial court specifically found that "exigent circumstances" justified the warrantless entry. The trial court did not mention "consent" in any context in summarizing the evidence or in ruling on the defendant's motion.

After the defendant's motion to suppress was denied, he entered conditional pleas of nolo contendere pursuant to General Statutes § 54-94a[5] to violations of General Statutes §§ 21a-279 (a) and 21a-277 (a).[6] The trial

[5] General Statutes § 54-94a provides: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[6] General Statutes § 21a-279 (a) provides: "(Formerly Sec. 19-481). PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen

court accepted the defendant's pleas and subsequently sentenced him to a five year term of imprisonment suspended after three years. The defendant appealed to the Appellate Court.[7] In that appeal the defendant addressed the litigated issue of whether exigent circumstances justified his warrantless arrest in his home. Apparently anticipating claims by the state that consent and inevitable discovery were alternative grounds on which the decision of the trial court denying the suppression of the seized evidence could be upheld, he also briefed those issues.

In its opinion the Appellate Court found that the police had obtained a voluntary consent to enter the defendant's home from the defendant's wife; *State* v. *Reagan,* supra, 546; that the police had not exceeded the scope of the consent; id., 547; and there had not been a clear withdrawal of the consent. Id. In light of these findings, the Appellate Court refused to reach the issues of exigent circumstances and inevitable discovery. Id., 548. Thereupon, based not on exigent cir-

years, or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years, or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned.''

  General Statutes § 21a-277 (a) provides: ''(Formerly Sec. 19-480). PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned.''

  [7] The information had also charged the defendant with conspiracy to sell narcotic substances in violation of General Statutes §§ 53a-48 and 21a-277 (a). Upon the defendant's having entered nolo contendere pleas to the first two counts, the state nolled the conspiracy charge.

cumstances but on the consent of the defendant's wife to the entry of the home and bedroom, the Appellate Court affirmed the judgment of the trial court. The defendant then petitioned this court for certification. As indicated earlier, certification was granted limited to the following question: "Did the Appellate Court err in concluding from the transcript that the defendant's wife had consented to the officers' entry into his bedroom when the trial court had found that she had attempted to block their entry into that room?" In this court, the defendant argued that the Appellate Court erred in upholding the decision of the trial court on the basis of a consensual entry because the issue of consent had not been raised at the suppression hearing, the state had not established that consent to enter the home or bedroom had been voluntarily given, and the record was insufficient to support such a factual finding. We agree that the record is insufficient to support an appellate finding of consent.

It is axiomatic that "[a] warrantless search [or entry into one's home] is not unreasonable under either the fourth amendment to the constitution of the United States or article first, § 7, of the constitution of Connecticut if a person with authority to do so has freely consented . . . . *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Dotson* v. *Warden,* 175 Conn. 614, 618, 402 A.2d 790 (1978). The state bears the burden of proving that the consent was free and voluntary and that the person who purported to consent had the authority to do so. *Bumper* v. *North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968) [on appeal after remand, 5 N.C. App. 528, 169 S.E.2d 65, aff'd, 275 N.C. 670, 170 S.E.2d 457 (1969)]; *Dotson* v. *Warden,* supra, 618–19. . . . 'The question whether consent to a search has in fact been freely and voluntarily given, or was the product of coercion, express or implied, is *"a question of fact*

to be determined from the totality of all the circumstances." [Emphasis added.] *Schneckloth* v. *Bustamonte,* supra, 227. As a question of fact, it is normally to be decided by the trial court upon the evidence before that court together with the reasonable inferences to be drawn from that evidence.' *Dotson* v. *Warden,* supra, 619; see also *State* v. *Zindros,* 189 Conn. 228, 238, 456 A.2d 288 (1983) [cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984)]." *State* v. *Jones,* 193 Conn. 70, 78–79, 475 A.2d 1087 (1984); see also *State* v. *Cates,* 202 Conn. 615, 620–21, 522 A.2d 788 (1987); *State* v. *Reddick,* 189 Conn. 461, 468–69, 456 A.2d 1191 (1983). "Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant. *Steagald* v. *United States,* 451 U.S. 204 [101 S. Ct. 1642, 68 L. Ed. 2d 38] (1981); *Payton* v. *New York,* 445 U.S. 573 [100 S. Ct. 1371, 63 L. Ed. 2d 639] (1980); *Johnson* v. *United States,* 333 U.S. 10 [68 S. Ct. 367, 92 L. Ed. 436] (1948)." *Donovan* v. *Dewey,* 452 U.S. 594, 598 n.6, 101 S. Ct. 2535, 69 L. Ed. 2d 262 (1981). After a careful review of the record before this court, we determine that the Appellate Court erred in coming to its own factual conclusion that the defendant's wife had consented to the entry by the police into the defendant's bedroom.

Ordinarily it is not the function of this court or the Appellate Court to make factual findings, but rather to decide whether the decision of the trial court was clearly erroneous in light of the evidence and pleadings in the whole record. Practice Book § 4061; *Leo* v. *Leo,* 197 Conn. 1, 4–5, 495 A.2d 704 (1985); *Gallo* v. *Gallo,* 184 Conn. 36, 38, 440 A.2d 782 (1981); *Public Works Supply Co.* v. *Eveready Machinery Co.,* 11 Conn. App. 79, 79–80, 525 A.2d 988 (1987). Conclusions of fact may be drawn on appeal only where "the subordinate facts found [by the trial court] make such a con-

clusion inevitable as a matter of law"; *Papcun* v. *Papcun,* 181 Conn. 618, 621, 436 A.2d 282 (1980), citing *Bozzi* v. *Bozzi,* 177 Conn. 232, 240, 413 A.2d 834 (1979); *State* v. *Hanna,* 150 Conn. 457, 471, 191 A.2d 124 (1963); or where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision. See *State* v. *Copeland,* 205 Conn. 201, 208 n.3, 530 A.2d 603 (1987); *State* v. *Cates,* supra, 620. The limited record relevant to consent, which was before the Appellate Court and is before this court, is neither uncontroverted nor sufficiently clear to warrant a factual finding by a reviewing court that any consent to the initial entry[8] into the defendant's home encompassed Acker's passage through four rooms on the first floor, up a stairway, and his subsequent entry into the defendant's second floor bedroom, or a finding that actions of the defendant's wife at the top of the stairs did not constitute a withdrawal of any initial consent.

We note that the three interrelated issues concerning consent, i.e., the initial entry, the permissible scope thereof and the withdrawal, upon which the Appellate Court ruled were never in contention or argued during the two day suppression hearing, and were never

---

[8] The trial court's discussion of the initial entry during its ruling on the motion to suppress indicates a degree of skepticism or uncertainty regarding the initial entry and the existence of an invitation. The trial court stated: "Mrs. Reagan evidently let them in." While the trial court goes on to quote the defendant's wife as saying "Come on in," this quote is not found anywhere in the record. For the purposes of our discussion of the issue certified for review, we will assume that Acker's initial entry into the defendant's home was pursuant to the invitation of the defendant's wife and, therefore, based on a valid consent. It must be noted that this is not a finding by this court nor an acquiescence in the Appellate Court's finding on this issue. Should the matter ultimately be remanded to the trial court for further evidentiary hearings regarding the initial consent, our assumption shall not be deemed a finding on the issue.

ruled upon by the trial court. It is clear from the trial court's ruling that its findings were limited to its ultimate conclusion that "exigent circumstances" justified the warrantless entry into the defendant's home and the defendant's subsequent arrest. In fact, in an articulation filed by the trial court subsequent to the release of the Appellate Court's decision,[9] the trial court specifically stated that the conduct of the defendant's wife in the "foyer" at the top of the stairs, was addressed only "with reference to the exigent circumstances as the officers were on their way to make an arrest based upon a speedy information and that there was a danger of the evidence being destroyed." Further, the state has acknowledged that the focus of the parties' attention during the suppression hearing was restricted to the issue of exigent circumstances, and that the consent issue was raised for the first time in the Appellate Court.

It is against this backdrop that we turn to a review of the record to determine whether the undisputed subordinate facts in the record made the factual conclusion of consent by the Appellate Court so obvious and inevitable that it may stand. We conclude that they do not.

The only testimony potentially relevant to the issue of consent was that of Acker and that encompassed only two pages of the 241 page transcript of the sup-

[9] Subsequent to the publishing of the Appellate Court's decision in this matter, the state filed a motion for articulation seeking to have the trial court articulate the following issues: "(1) Was this court's statement that 'it wasn't until they got to the bedroom that [Mrs. Reagan] tried to block [the officers'] entrance' a finding of a subordinate fact, a conclusion of fact—that is, one based on subordinate facts—or a conclusion of law?"; and (2) "Was the statement made with reference to the issue of exigent circumstances or the issue of whether the initial consent to enter was withdrawn?"

pression hearing.[10] Acker testified that, when he and Merullo knocked on the back door of the defendant's home, the defendant's wife answered and merely "responded" to his question of whether "Ed" was there. He failed to testify as to the manner in which the defendant's wife responded or the content of her response. Acker then testified that, after the defendant's wife "responded," he entered the residence at her invitation, and proceeded to walk through a remodeled room, the kitchen, a dining room area, the living room, and then followed her up the stairs to a "foyer" on the second floor. While it appears from Acker's testimony that the defendant's wife may have consented

---

[10] The relevant portion of Sergeant Brian Acker's testimony encompassed the following:

"Q. Now, you said you went to the Reagan residence?

"A. I did.

"Q. And who was with you?

"A. Agent Merullo.

"Q. What did you do when you got to the residence?

"A. We parked the car in front of the neighbor's house and we walked to what I would call a back door. I knocked on the back door. A woman inside came part way towards the door. When I saw her I asked her if Ed was there.

"Q. And did she respond?

"A. She did.

"Q. And what did you do?

"A. I entered the residence.

"Q. Did she at any time ever deny you entrance to the residence?

"A. She did not. In fact, she invited me in.

"Q. Now, at this time when you entered the residence, did you have any weapons displayed?

"A. No.

"Q. What did you do when you got inside the residence?

"A. I walked through a room that appeared to be remodeled, walked through that room, through the kitchen into a dining room area. At this point I took a left through the living room. At a point in the living room I said to an elderly lady, I said, 'Hello.' I followed the woman who had first answered the door up the stairs to the second floor.

"Q. Was she leading you or were you leading her?

"A. No. She was leading me and we entered the second floor level and go into, I would describe it like a foyer, it was larger than a hallway and it had a number of bookshelves and books in that foyer.

"Q. And what did you do at that point?

to Acker's entry into the residence, there is insufficient evidence to indicate that her invitation extended to the four rooms on the first floor that Acker traversed, let alone the stairway to the second floor and the defendant's bedroom. In fact, the record of Acker's testimony is totally silent with regard to the parameters of the initial consent. Further, although Merullo also testified at the suppression hearing, the state did not elicit any testimony from him regarding the circumstances surrounding Acker's entry into the defendant's home, thus failing to corroborate the existence or the extent of the alleged invitation to enter by the defendant's wife.

On the present state of the record, we cannot find, nor could the Appellate Court have found, that, as a

"A. At that particular time the woman who had invited me in initially positioned herself where it would make it difficult for me to get by. I had observed the woman in the bedroom which was at the end of this foyer. At that point I just worked, kind of pushed my way by gently and went into that bedroom.

"Q. Now, did you ever identify yourself as a police officer?

"A. No, I did not. Not prior to this.

"Q. As you were entering the house, did you ever advise anyone that you were a police officer?

"A. No, I did not.

"Q. Did you ever advise anyone that you were there to arrest the Defendant?

"A. No, I did not.

"Q. And why was that?

"A. If you enter the door on the first floor and you are to identify yourself as a police officer, if you are there to say you are there to arrest an individual and that individual is on the second floor, all one would have to do is yell upstairs and warn him and evidence would be destroyed.

"Q. Now, you stated that you pushed gently by the woman?

"A. That's right.

"Q. And what did you do at that point?

"A. Entered the bedroom.

"Q. And what did you do when you got in the bedroom?

"A. When I entered the bedroom, I said, 'Mr. Reagan.' He had his back to me. I identified myself as a police officer, told him not to move and placed him under arrrest.

"Q. And do you see that individual here in the Courtroom that you placed under arrest?

"A. Yes."

matter of law, the state affirmatively established that the defendant's wife consented to Acker's entry into and through the four first floor rooms, his ascension of the stairway to the second floor and his subsequent entry into the defendant's bedroom. An invitation to enter one's home does not necessarily imply an invitation or consent to enter all areas of that home. See *People* v. *Brown,* 162 Ill. App. 3d 528, 538, 515 N.E.2d 1285, appeal denied, 119 Ill. 2d 561, 522 N.E.2d 1248 (1987); *Lance* v. *State,* 425 N.E.2d 77, 80 (Ind. 1981); *State* v. *Drouhard,* 31 Or. App. 1083, 1086, 572 P.2d 331 (1977); *State* v. *Monahan,* 76 Wis. 2d 387, 394, 251 N.W.2d 421 (1977). "When the police are relying upon consent as the basis for their warrantless search, they have no more authority than they have been given by the consent. It is thus important to take account of any express or implied limitations or qualifications attending that consent which establish the permissible scope of the search in terms of such matters as time, duration, area, or intensity." 3 W. LaFave, Search and Seizure (2d Ed.) § 8.1 (c), p. 160. The state bears the burden affirmatively to establish that consent was voluntary; *State* v. *Jones,* supra, 78; *Dotson* v. *Warden,* supra, 619; and the consent shall not be lightly inferred. See *United States* v. *Impink,* 728 F.2d 1228, 1232 (9th Cir. 1984); 68 Am. Jur. 2d 699, Search and Seizures § 46. Accordingly, we conclude that the Appellate Court erred in making an affirmative factual finding that Acker did not exceed the scope of any initial consent when he reached and ascended the stairway to the second floor and entered the defendant's bedroom.

The Appellate Court also found as a fact that the defendant's wife's positioning herself at the top of the stairs and making it difficult for Acker to pass did not amount to a withdrawal of her consent. In light of Acker's testimony on this issue, which the state concedes could reasonably be construed in a variety of

ways, including a withdrawal of consent, we find that the Appellate Court erred in arriving at a factual conclusion that was not, as a matter of law, warranted by the record.

A consent to enter or to search, once given, can be withdrawn or limited at any time prior to the completion of the search; *United States* v. *Dyer,* 784 F.2d 812, 816 (7th Cir. 1986); *Mason* v. *Pulliam,* 557 F.2d 426, 428–29 (5th Cir. 1977); 3 W. LaFave, supra, § 8.1 (c), pp. 172–73; by some verbal or physical act indicating that the consent has been withdrawn. *State* v. *Wargih,* 418 So. 2d 1261, 1263 (Fla. 1982). Acker testified that, upon reaching the "foyer" at the top of the stairs, the defendant's wife "positioned herself where it would make it difficult for [him] to get by." He further testified that in order to enter the defendant's bedroom he had to "kind of [push his] way by [the defendant's wife] gently . . . ." Such testimony, at the very least, raises a factual issue as to whether the defendant's wife intentionally positioned herself in order to block[11] Acker's way and thereby withdrew or limited any consent she may previously have given. Without additional evidence or additional findings of subordinate facts by the trial court, we conclude that the Appellate Court erred in arriving at the factual conclusion that the defendant's wife did not withdraw or limit any consent she may have given to the entry of the Reagan home.

It is not particularly surprising that the subordinate facts relating to consent were never so definitively established as to allow a factual finding of consent by

[11] During its oral ruling on the motion to suppress, the trial court initially stated that the defendant's wife "blocked" Acker's entrance into the defendant's bedroom upon reaching the top of the stairs. Subsequently, in its articulation dated March 15, 1988, the court indicates that the use of the term "blocked" was a misstatement of the facts and that the transcript indicates that the defendant's wife "positioned herself where it would make it difficult for [the officer] to get by."

the Appellate Court, because consent was never raised by either party at the suppression hearing and the trial court specifically limited its findings to the litigated issue of exigent circumstances. On the record before it, the Appellate Court "should not simply have made factual findings [concerning consent] on its own." *Icicle Seafoods, Inc.* v. *Worthington,* 475 U.S. 709, 714, 106 S. Ct. 1527, 89 L. Ed. 2d 739 (1986). Accordingly, we reverse the judgment of the Appellate Court and remand the case to that court for a determination of whether the trial court erred in finding the existence of exigent circumstances to justify the warrantless entry into the defendant's home and his subsequent arrest. In addition, should the Appellate Court find error on that issue on remand, we order that the case be remanded to the trial court with direction to conduct further evidentiary hearings to determine whether the defendant's wife consented to Acker's entry into the defendant's home and second floor bedroom, and if there was consent, whether it was withdrawn.

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.