[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO RETURN SEIZED PROPERTYAND STATE'S IN REM PROCEEDING FOR ADJUDICATION AS NUISANCE
This case arises out of a March 11, 1994 incident that occurred at the Wallingford home of one Roberta Rashba, her son, Larry, and her live-in boyfriend, Ronald Solters, the defendant. Ten-year-old Larry had been shot by a nine-year-old playmate, both of whom had been playing with guns belonging to the defendant. Police were summoned, and Larry, along with his mother, was transported to a hospital. While at the hospital, Roberta Rashba signed a written consent to a search of her home by the Wallingford Police Department. The defendant, who had been working out of the home during the incident, subsequently returned. Initially reluctant, he also consented to a search and signed a consent form. Although he later exhibited some misgivings, he never revoked his consent, nor did he limit its scope to certain locations or to the seizure of certain weapons.
Police searched the master bedroom, in which the shooting had occurred, a spare bedroom and other areas of the house. They found, videotaped and seized over three dozen firearms, including pistols, rifles, shotguns and assault weapons, as well as ammunition, trigger locks (none of which were on the weapons) and other paraphernalia. Many of the weapons were loaded and capable of being discharged. They were found primarily in the master bedroom, in which the children had been playing and in which the shooting had occurred, and in a nearby spare bedroom, both of which were unlocked and open at the time of the arrival of the police. The weapons were found on the floor, on shelves, in closets and in other areas that were readily accessible to anyone. No effort, apparently, had been made to lock those weapons that could be locked or otherwise to render them inaccessible to the child who lived at the residence or to other children who might visit there. All of the weapons and related items belonged to the defendant, Ronald Solters.
The defendant was subsequently arrested on a warrant issued three days later, charging him with criminally negligent storage CT Page 9057 of a firearm in violation of General Statutes § 53a-217a and two counts of risk of injury to a minor, in violation of General Statutes § 53-21. The defendant has moved for return of most of the seized property pursuant to General Statutes § 54-33a
and 54-33f, the fourth and fourteenth amendments to the United States Constitution and Article I, §§ 7, 8 and 9 of the Connecticut Constitution.[1] The State, for its part, resists the motion for return of property and seeks to have the seized weapons adjudicated as a nuisance and ordered destroyed or otherwise disposed of pursuant to General Statutes § 54-33g.
The defendant's first claim, that he did not consent to the search of the premises, is without merit, and, based on his supplemental brief, he appears to have abandoned this claim. Even if that were not the case, of course, the owner of the home, Roberta Rashba, did give her valid consent to the search.[2] It was clear from the testimony of investigating police officers that Solters, upon learning of the shooting incident, was uncomfortable about the prospect of a search. Nevertheless, upon hearing that Rashba had consented and that the police, if necessary, would seek a search warrant to search the premises, he eventually did consent and signed a written form memorializing that consent.
The defendant also claims that in consenting to the search, he did not agree to its scope and hence to the seizure of all the weapons. He complains that it was not specifically explained to him that the search would be as wide ranging as it was, that the entire house would be searched, and that all of the weapons belonging to him would be seized. The failure specifically to communicate this information, however, does not invalidate the consent. The defendant has offered no authority in support of his contention that the police had an obligation advise the defendant that his entire gun collection was subject to seizure once he had given his consent. Although police officers "have no more authority than they have been given by the consent", Statev. Reagan, 209 Conn. 1, 12, 546 A.2d 839 (1988), the consent form signed by the defendant authorized a search of the entire premises without limitation, and it also authorized the officers "to take from the aforesaid location such materials or other property as they may desire."
The defendant would like the court to rule that the defendant reasonably expected that the search would be limited to evidence of "the shooting". However, the defendant was not charged with a CT Page 9058 shooting, nor could he reasonably have been considered to have been a suspect in a shooting. Rather, the charges against the defendant relate to illegal storage of a weapon and risk of injury to a minor child. The search of the home produced substantial quantities of evidence that the defendant had created a situation likely to impair the health and morals of a minor child by his leaving numerous loaded weapons, unloaded weapons and ammunition about the premises where a child could easily gain access to them and, as the facts of this case established, did gain such access. In the alternative, the defendant claims that, even if the search and seizure was legal, the state must return those items because they are not evidence of a crime. As previously discussed, however, these items are, at a minimum, evidence of the crime of risk of injury to a minor child.[3]
Although the additional weapons may not be necessary to the State in proving the crimes charged, one can readily imagine that evidence of the entire scene with weapons, both loaded and unloaded, scattered about the house, would persuade the trier of fact that the defendant had willfully or unlawfully created a situation that placed at least the minor child residing in the home at risk of harm. By its ruling, the court does not mandate that these items be admitted as evidence in the defendant's trial. Rather, this ruling is limited to denying the defendant's motion to have his property returned to him at this time.
As to the in rem proceeding, General Statutes § 54-33g
provides, in pertinent part:
 "When any property believed to be possessed, controlled, designed or intended for use or which is or has been used or which may be used as a means of committing any criminal offense . . . has been seized as the result of a lawful arrest or lawful search, which the state claims to be a nuisance and desires to have destroyed or disposed of . . ., the judge or court issuing the warrant or before whom the arrested person is to be arraigned shall, within ten days after such seizure, cause to be left with the owner of . . . the property so seized, a summons notifying the owner. . . .
The court has reviewed the casefiles of both the criminal case and the in rem proceeding and finds that the seizure occurred on March 11, 1994, that the defendant was arrested pursuant to an arrest warrant on March 14, 1994, that he was arraigned in this court and bond set on March 15, 1994, and that a summons was served on him on March 16, 1994, ordering him to be present for CT Page 9059 an in rem hearing scheduled for March 22, 1994, which was also the next scheduled court date following arraignment for the criminal case. The file also reveals that on March 16, 1994, Virginia B. Hemming, a deputy clerk of this court, signed the summons commanding "any proper officer" to summon the defendant to appear at the March 22, 1994 hearing. The form gives no indication as to which judge, if any, ordered the summons to be served. The court notes that the summons is dated March 16, 1994, which is not a date upon which the Solters case was otherwise on the court's docket, and no transcript of any proceeding in which a judge issued such an order has been presented to this court. At the hearing on the instant matters, the state offered no additional evidence purporting to show that the summons was the result of an order by any particular judge.
This court cannot simply assume that a judge of this court caused the summons in this case to be issued. The state has offered no authority in support of the proposition that a deputy clerk has the authority to order such a summons to issue absent a judge's order. In the absence of evidence upon which this court can conclude that the summons was validly issued, it has no choice but to dismiss the in rem proceedings.
The defendant's motion to return seized property is therefore denied, and the state's in rem proceeding for adjudication as nuisance is dismissed.
Jonathan E. Silbert, Judge